## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MICHAEL ANTHONY TORREY,

        Petitioner,

v.                              Case No.  3:17-cv-91-MCR/MJF

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Michael Anthony Torrey filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 32). Torrey replied. (Doc. 39). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Torrey is not entitled to habeas relief.[1]

_____

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background Facts and Procedural History[2]

On February 26, 2009, Macey Hardenbrook and her children were living with Carol Hughley and her children in Hughley's home. After putting the children to bed, Hardenbrook and Hughley had drinks, played cards, and watched television with Samuel Simmons, a longtime friend of Hardenbrook. The three were joined by Torrey, an acquaintance of Hughley. As the evening wore on, Hardenbrook became increasingly uncomfortable with Torrey after he made unwanted sexual advances.[3] Hardenbrook eventually complained to Simmons, and both Hardenbrook and Simmons told Torrey to leave. This resulted in an altercation in which Torrey struck Simmons with a pair of brass knuckles. Torrey also took a swipe at Hardenbrook's face with the brass knuckles, but missed. Finally convinced to leave, Torrey exited the house but threatened Simmons, "I got you, I got you.", which Simmons took as a warning to "watch my back." By this time, it was early morning.

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 32, Exs. B-E (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[3] Hardenbrook stated: "When I'd walk into the other room, he'd follow, and  he was coming on to me and I didn't feel comfortable with that. . . . Like groping me, feeling me, and I wasn't comfortable with that." (Ex. B, p. 129).

After Torrey left, Simmons approached the closed front door and watched him through a window. Simmons saw Torrey turn and creep back up to the front door holding a gun. The gun was drawn. Simmons called 911 and positioned himself behind the front door. Torrey then fired five bullets—the full capacity of his five-shot revolver—into the door. One bullet penetrated the door, and the four others lodged inside the door. No one was hit.

Simmons, Hardenbrook, and Hughley waited for the police to arrive and tried to calm the children. When the police failed to arrive after ninety minutes, they decided to go to bed.[4] Hardenbrook walked one of her children to the bathroom and then went to her own bedroom to start a movie for the children. Hardenbrook sat on the bed and turned on the television, not realizing that Torrey was outside her bedroom window watching her. As Hardenbrook pressed the play button to start the movie, Torrey shot her through the window. Upon the first shot, Hardenbrook looked toward the window—the origin of the sound—and saw the shadow of an arm and flashes of light as Torrey fired four more shots at her, the full capacity of his weapon. A total of four bullets struck Hardenbrook, with one lodging in her liver

---

[4] Simmons mistakenly had provided the police with the wrong address.

and another in her pelvis. Hardenbrook survived. When she testified at trial two years later, one bullet remained in her pelvis.

Law enforcement executed a search warrant at Torrey's home and recovered a pair of brass knuckles and an Iver Johnson .38 caliber five-shot revolver. The State's firearms expert examined eight fired projectiles recovered from the shootings: five projectiles from Hughley's front door (four from inside the door and one that penetrated the door); two projectiles from inside Hardenbrook's bedroom; and one projectile from Hardenbrook's body. The expert determined, conclusively, that four of the bullets were fired from Torrey's revolver.[5] Of those four, two bullets were recovered from the front door, one was from Hardenbrook's bedroom, and one was from Hardenbrook's body.

Torrey was charged in Escambia County Circuit Court Case No. 2009-CF-1266, with one count of attempted first degree premeditated murder with a firearm (Hardenbrook), one count of aggravated battery with great bodily harm or with a deadly weapon (Simmons), and two counts of shooting at or into a building. (Doc.

---

[5] One projectile was too damaged to examine. (Ex. C, pp. 292, 294-95). Three projectiles had similar characteristics and were of similar caliber, but could not be identified or eliminated as having been fired from Torrey's revolver due to damage or lack of unique markings. (Ex. C, pp. 292, 295).

32, Ex. A, p. 1).[6] The State nolle prossed the aggravated battery charge. (Ex. A, p. 11; Ex. B, p. 87). Torrey elected to be tried on the remaining three charges and a jury found him guilty as charged. (Ex. A, pp. 2-3). With regard to the attempted murder, the jury made four additional findings: that during Torrey's commission of the crime he actually possessed a firearm; he discharged the firearm; his discharge of the firearm resulted in great bodily harm to Hardenbrook; and he carried, displayed, used, threatened to use, or attempted to use a firearm. (Ex. A, pp. 2-3).

The trial court adjudicated Torrey guilty and sentenced him to a total term of 30 years of imprisonment. (Ex. A, pp. 4-11).[7] The Florida First District Court of Appeal ("First DCA") affirmed on October 29, 2012, *per curiam* and without written opinion. *Torrey v. State*, 100 So. 3d 684 (Fla. 1st DCA 2012) (Table) (copy at Ex. I).

On November 25, 2014, Torrey filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Ex.

---

[6] All references to exhibits are to those provided at Doc. 32. Where a page of an exhibit bears more than one-page number, the court cites the number appearing at the bottom-most center of the page.

[7] Torrey was sentenced to 30 years in prison for the attempted murder and 15 years in prison for each of the shootings into the home, with all sentences running concurrently.

P, pp. 758-71 (second amended motion)).[8] The state circuit court conducted a limited evidentiary hearing and denied relief by written order. (Ex. P, pp. 777-78 (order setting hearing); Ex. Q, pp. 779-812 (evidentiary hearing transcript); Ex. Q, pp. 844-961 (order)). The First DCA affirmed *per curiam* without written opinion. *Torrey v. State*, 229 So. 3d 324 (Fla. 1st DCA 2016) (Table) (copy at Ex. U). The mandate issued January 25, 2017. (*Id*.).

Torrey filed his *pro se* federal habeas petition on February 1, 2017, raising three claims. (Doc. 1). The State asserts that Torrey's first claim is not cognizable on habeas review and, in any event, is without merit. The State argues that Torrey's remaining claims are procedurally defaulted and, even if deemed properly exhausted, fail to meet § 2254(d)'s demanding standard for federal relief. (Doc. 32).

## II. Controlling Legal Principles

### A. Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal

---

[8] Torrey filed several other postconviction motions, but only his Rule 3.850 proceeding is relevant to the claims raised in this habeas proceeding. The State does not assert a statute of limitations defense. (Doc. 32, pp. 11-12).

law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[9] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[9] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to a footnote—Scalia) in part II (529 U.S. at 403-13).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. ___, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. ___, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

### B.    Exhaustion and Procedural Default

Before bringing a § 2254 habeas action, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),

thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not properly exhausted in state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *See Boerckel*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile—because the petitioner's claims would clearly be barred by state procedural rules—a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (quoting *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the

reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).The *Schlup* standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

**III.   Petitioner's Claims**

**Ground One**       **"Petitioner presents claim(s) of Actual Innocence of the offenses for which he has been convicted. As to Count One the State failed to prove the 'intent' element to support First Degree Premeditated Attempted Murder with a Firearm" (Doc. 1, p. 5).**

Torrey claims he is actually innocent and that there was insufficient evidence of premeditation to support his attempted murder conviction. (Doc. 1, pp. 5-5D). Torrey asserts he exhausted this claim by raising it on direct appeal. (*Id*., p. 5).

The State argues that to the extent Torrey's claim is one of actual innocence, he is not entitled to federal habeas relief because freestanding claims of actual innocence are not cognizable on federal habeas review and, even if they were, Torrey's claim is procedurally defaulted because he never presented an actual innocence claim to the state courts. (Doc. 32, pp. 16-18). The State contends that to the extent Torrey attacks the sufficiency of the evidence, his claim is without merit because the evidence was legally sufficient to convict him of all three crimes. (*Id*., p. 19).

Torrey replies that Ground One should be construed as the same claim he presented to the First DCA on direct appeal, that is, that the trial court erred in denying his motion for judgment of acquittal of attempted murder because the evidence was legally insufficient to prove premeditation. (Doc. 39, pp. 8-14). For

completeness, the undersigned will briefly address Torrey's assertion of actual innocence before addressing his insufficient evidence claim.

### A.    Actual Innocence

A freestanding claim of actual innocence is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases[.]"). This rule "is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera*, 506 U.S. at 400-01. Thus, to the extent Torrey claims he is actually innocent, his claim provides no basis for federal habeas relief.

**B.    Sufficiency of the Evidence**

Torrey's counseled direct appeal presented one issue:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS TO ATTEMPTED MURDER AS THE EVIDENCE WAS LEGALLY INSUFFICIENT TO PROVE PREMEDITATION.

(Doc. 32, Ex. F). The First DCA affirmed Torrey's conviction without explanation. (Ex. I). Torrey argues that the First DCA's rejection of his claim was contrary to clearly established Supreme Court precedent. (*Id.*).

### i.    Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979). "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 324 n.16).

The federal standard finds evidence sufficient to support a conviction "if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.'" *Johnson*, 566 U.S. at 654 (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). By confining the court's review to that legal question, *Jackson*'s limited, deferential standard ensures that the court "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 715 (2016) (quoting *Jackson*, 443 U.S. at 319); *see also Johnson*, 566 U.S. at 655 (explaining that *Jackson*'s deferential standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" (quoting *Jackson*, 443 U.S. at 319)). In other words, this court must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *See Jackson*, 443 U.S. at 326.

### ii.    Section 2254 Review of State Court's Decision

Both the state trial and appellate courts denied, without explanation, Torrey's challenge to the sufficiency of the evidence on the element of premeditation. (Ex. D, pp. 418, 533 (trial court's denial of motion for JOA); Ex. I (First DCA's opinion)). The First DCA's summary rejection of Torrey's claim qualifies as an adjudication on the merits under § 2254(d) so as to warrant deference. *Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court

to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). In reviewing the First DCA's unexplained decision under § 2254(d), this court "must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (quoting *Richter*, 562 U.S. at 102).

In Florida, attempted first degree premeditated murder has three elements: (1) the defendant did an act intended to cause the death of the victim that went beyond just thinking or talking about it; (2) the defendant acted with a premeditated design to kill the victim; and (3) the act would have resulted in the death of the victim except that someone prevented the defendant from killing the victim or the defendant failed to do so. *See* Fla. Stat. §§ 782.04(1), 777.04; *Standard Jury Instructions in Criminal Cases (93-1)*, 636 So. 2d 502, 503 (Fla. 1994). Florida law defines premeditation as follows:

> A premeditated design to kill means that there was a conscious decision to kill. The decision must be present in the mind at the time the act was committed. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the act. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the act was committed.

> The question of premeditation is a question of fact to be determined by [the factfinder] from the evidence. It will be sufficient proof of premeditation if the circumstances of the attempted killing and the conduct of the accused convince [the factfinder] beyond a reasonable doubt of the existence of premeditation at the time of the attempted killing.

*Standard Jury Instructions in Criminal Cases (93-1)*, 636 So. 2d 502, 503 (Fla. 1994). The Florida Supreme Court held in *Larry v. State*, 104 So. 2d 352 (Fla. 1958):

> Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned.

*Id*. at 354.

At trial, the court properly instructed the jury on all elements of the crime, including premeditation. (Doc. 32, Ex. E, pp. 625-28). Additionally, the court instructed the jury on the lesser-included offenses of attempted second degree murder, aggravated battery, attempted voluntary manslaughter, and battery. (*Id*., pp. 629-33).

The First DCA reasonably concluded that the State's evidence of premeditation satisfied the due process standard. The State's evidence, described earlier in this Report, showed that Torrey had a heated argument with Hardenbrook

and Simmons, physically fought and struck Mr. Simmons, and tried to hit Hardenbrook. As Torrey left the residence, he threated Simmons, then returned and shot his revolver, until it was empty, into the front door. Approximately 90 minutes later—more than enough time for reflection—Torrey returned to the home, walked around to a bedroom window, observed Hardenbrook, and fired five shots at her, hitting her four times. Torrey had to reload his revolver between these events, because the gun held only five bullets. *See supra* Background Facts.

In addition to that evidence, the State's firearm expert testified that he examined the trigger pull of the revolver Torrey used in the shootings. Trigger pull is the amount (in pounds) of force that must be applied on the trigger to have the firearm discharge. Torrey's revolver allowed two different methods of firing: single-action and double-action.[10] Both methods required significant force to pull the trigger. (Doc. 32, Ex. C, pp. 288-89).

---

[10] With the single-action method, you must manually cock the hammer and, when you pull the trigger, the hammer moves forward to discharge the firearm. The single-action trigger pull is approximately five-and-one-quarter pounds. With the double-action method, the hammer is at rest and, when you pull the trigger, the hammer goes back for the first motion and then forward for the second motion. The double-action trigger pull is approximately ten-and-three-quarter pounds. (Ex. B, pp. 288-89).

The State also presented the testimony of an investigator (Stone) who simulated what Torrey could have seen standing outside Hardenbrook's bedroom window. Investigator Stone arrived on the scene around 5:00 a.m., which was 2-3 hours after the shooting. Stone stood outside the house and looked through the bedroom window. The windows were covered inside by a light, sheer-type curtain. The window was approximately 5-6 feet from the television. Stone turned out the lights in the bedroom, but kept the television on to resemble the lighting during the shooting. Stone could see inside the bedroom from outside. (Ex. C, pp. 314-387).

In light of all the State's evidence, a fairminded jurist could concur in the First DCA's determination that viewing the trial evidence in the light most favorable to the prosecution, a rational juror could infer that Torrey acted with a premeditated design to kill Hardenbrook. *See Davis v. Ayala*, 576 U.S. ___, 135 S. Ct. 2187, 2199 (2015) (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness", and that a habeas petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal quotation marks and citations omitted)); *see also Jackson*, 443 U.S. at 319. Torrey has not met § 2254(d)'s demanding standard and is not entitled to federal habeas relief.

To the extent Torrey attempts to challenge the sufficiency of the evidence on his remaining convictions for shooting into a building, he procedurally defaulted that aspect of his claim by not presenting it, ever, to the state courts. Torrey's suggestion that his appellate counsel was ineffective for failing to raise the claim on direct appeal is unavailing, given the substantial identification evidence presented by the State, including eyewitness testimony and expert testimony. Torrey's procedural default bars federal habeas review of any additional challenge to the sufficiency of the evidence.

**Ground Two**    **"Counsel was ineffective for failing to object to the principals jury instruction." (Doc. 1, p. 6).**

Torrey claims trial counsel was ineffective for failing to object to the trial court instructing the jury on principals. Torrey argues that the instruction was improper because "[t]here was not evidence offered at trial by either party that Petitioner worked in conjunction with anyone else to commit the shootings. According to the State's theory, Petitioner was the shooter." (Doc. 1, p. 6A). Torrey asserts he exhausted this claim by raising it in his amended Rule 3.850 motion and pursuing the issue in his postconviction appeal. (Doc. 1, p. 7).

The States asserts a procedural default defense, arguing that although Torrey raised his ineffective assistance claim in his second amended Rule 3.850 motion, he

abandoned it in his *pro se* postconviction appeal by re-casting the claim as one of trial court error rather than ineffective assistance of counsel. (Doc. 32, pp. 8, 19 (citing Ex. R, pp. 6-11)). The State argues that even assuming to Torrey's benefit that he fairly presented his ineffective assistance claim to the postconviction appellate court, he is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard.

Torrey replies that his postconviction appellate brief sufficiently apprised the First DCA that he was seeking further review of his ineffective assistance claim. (Doc. 39, p. 14). This court need not resolve the procedural default issue, because even assuming to Torrey's benefit that he "invoke[ed] one complete round of the State's established appellate review process" *Boerckel*, 526 U.S. at 845, he is not entitled to habeas relief.

### A.   Clearly Established Federal Law

The Supreme Court follows a two-part test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show: (1) his counsel's performance was constitutionally deficient; and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Pinholster*, 563 U.S. at 189 ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### B.    Section 2254 Review of State Court's Decision

The state circuit court denied relief by written order. The order correctly identified *Strickland* as the controlling legal standard (Ex. Q, p. 844), and denied relief for these reasons:

> Defendant claims trial counsel was ineffective for failing to object to the principal instruction. He alleges the State's theory was that Defendant was the shooter, while Defendant's theory was that Rashaad Wilson was the shooter, and Defendant had no involvement. He alleges there was no evidence at trial that he did some act or said some word which was intended and did incite, cause, encourage, assist, or advise someone else to commit the shootings.
>
> At trial, Detective Clinton Gregory Stone testified he conducted a recorded interview of Defendant at the police department. (Exhibit A, p. 321.) In the recorded interview, which was played for the jury, Defendant made statements indicating Macey Hardenbrook and Samuel Simmons tried to rob him, and he went home and called people to help him "solve it." (Exhibit A, pp. 331-333.) One of the people he called was Rashaad Wilson. (Exhibit A, pp. 364-365.) Defendant at first denied having a gun at his house but later stated Wilson brought him the gun, and Defendant hid it. (Exhibit A, pp. 343-344, 357, 366-367.)
>
> Defendant testified at trial that Hardenbrook and Simmons struck and tried to rob him. (Exhibit A, pp. 462, 464.) Wilson told Defendant he handled it. (Exhibit A, p. 477.) Defendant also admitted there was a gun in his house, but denied it was his. (Exhibit A, pp. 478-479, 482.) In the police interview, he denied having it in order to protect Wilson. (Exhibit A, p. 482.)
>
> Based on the testimony and the recorded statement, there was sufficient evidence to support a principal instruction. *See Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988); § 777.011, Fla. Stat. Therefore,

counsel's performance was not deficient for having not objected to the principal instruction.

Also, there is no reasonable probability of a different outcome had counsel objected and there was no principal instruction. While the State argued one option was that Defendant got somebody else to do the shooting, the State doubted that option. (Exhibit A, p. 624.) It is apparent the jury did not find Defendant guilty as a principal, as the jury found Defendant actually possessed a firearm and discharged the firearm. (Exhibit B.) *See Earnest v. State*, 351 So. 2d 957, 959 (Fla. 1977); *Sims v. State*, 44 So. 3d 1222, 1224 (Fla. 5th DCA 2010).

(Ex. Q, pp. 845-46). The First DCA summarily affirmed without explanation. (Ex. U).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary). Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision

adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018).

There is no merit to Torrey's argument that the state court's decision was contrary to clearly established federal law, because the state court utilized the *Strickland* standard. As to § 2254(d)'s remining elements, this court has reviewed the trial transcript and it amply supports the state court's factual findings. Based on these findings, the court determined that the principal instruction was appropriate under Florida law; therefore, counsel was not deficient for failing to object.

Torrey's argument that the state court unreasonably applied *Strickland* obviously depends on this court determining whether counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law (Florida's law on principals and the circumstances where a principals instruction is appropriate). In *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir.2005), the Eleventh Circuit was faced with a similar situation. There, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial. The Florida Supreme Court concluded such an objection would have been overruled and therefore counsel was not deficient. *Id*. at 1354-55. The Eleventh Circuit held: "The Florida Supreme Court already has told us how the

issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. " *Id*. (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

Here, as in *Herring*, the state courts have already answered the question of what would have happened had counsel objected to the instruction on principals—the objection would have been overruled. Therefore, trial counsel was not ineffective for failing to make that objection.

Moreover, Torrey cannot satisfy *Strickland*'s prejudice prong. As the state court reasonably concluded, there is no reasonable probability of a different trial outcome had counsel objected, because the jury did not find Torrey guilty as a principal; rather, it determined he actually possessed and discharged the firearm.

The state court's rejection of Torrey's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Torrey is not entitled to federal habeas relief.

**Ground Three**    **"Ineffective Assistance of Counsel for failing to object to the State's improper remarks during closing arguments at trial." (Doc. 1, p. 8).**

Torrey's last claim faults trial counsel for failing to object to numerous comments by the prosecutor during closing arguments. (Doc. 1, p. 9A-8C). Torrey alleges the remarks were improper because they expressed the prosecutor's personal opinions on witnesses' credibility, argued facts not in evidence and expressed a personal belief that Torrey was guilty. (*Id*.).

The State asserts the same procedural default defense as in Ground Two and argues that, although Torrey raised his ineffective assistance claim in his second amended Rule 3.850 motion, he abandoned it in his postconviction appeal by re-casting the claim as trial court error rather than ineffective assistance of counsel. (Doc. 32, pp. 8, 20-21 (citing Ex. R, pp. 12-21)). The State argues that even assuming to Torrey's benefit that he fairly presented his ineffective assistance claim to the postconviction appellate court, he is not entitled to federal habeas relief because he fails to meet § 2254(d)'s demanding standard.

Torrey replies that his postconviction appellate brief sufficiently apprised the First DCA that he was seeking further review of his ineffective assistance claim. (Doc. 39, p. 18). As with Ground Two, this court need not resolve the procedural default issue because even assuming to Torrey's benefit that he properly presented

his ineffective assistance claim to the First DCA, he fails to establish entitlement to habeas relief.

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

### B.    Section 2254 of State Court's Decision

The state circuit court denied relief by written order. The order correctly identified *Strickland* as the controlling legal standard (Ex. Q, p. 844), and denied relief for these reasons:

> Defendant claims counsel was ineffective for failing to object to numerous remarks made by the State during closing arguments. First, Defendant argues the State improperly expressed its personal opinion that Defendant was a liar. As discussed above, during his interview with Detective Stone, Defendant made contradictory statements as to whether he had a gun. Defendant also testified at trial and admitted he had lied about the gun. (Exhibit A, pp. 468, 478, 482.) Because there was a basis in the record that Defendant lied, the State's comment was not improper. *See State v. Comesana*, 904 So. 2d 462, 464 (Fla. 3d DCA 2005).

> Next, Defendant argues the State improperly vouched for its witness when it stated Jeff Foggy's testimony was rock solid. The prosecutor also stated Foggy takes his work seriously, everything is double checked, and Foggy is a hundred percent sure before he gets on the stand. (Exhibit A, pp. 623-624.)

> Foggy testified as an expert on firearms and tool marks. (Exhibit A, pp. 285-286.) During cross examination, he testified it was common

to cross compare cases with similar calibers. (Exhibit A, p. 297.) His ability to match a bullet to a firearm was based on his training and experience, the examination also includes a verification, and he explained that process. (Exhibit A, pp. 302-304.) He was asked by trial counsel if he had ever been wrong or misidentified a bullet, to which he replied no. (Exhibit A, pp. 307-308.) During closing, trial counsel stated Foggy testified he did not make mistakes, and she argued the only person who is perfect was Jesus, and people make mistakes. (Exhibit A, pp. 601-602.) She also argued Foggy wanted the jury to believe him due to his status as an expert and because he said so. (Exhibit A, pp. 600-602.) The prosecutor's statements at issue were fair comments in response to the cross examination and the defense closing argument attacking Foggy's credibility as an expert and the validity of his findings. *See Gonzalez v. State*, 136 So. 3d 1125, 1143 (Fla. 2014).

Next, the State argued Hardenbrook did not lie and say she saw Defendant outside the window, because that is not what she saw. (Exhibit A, p. 556.) Hardenbrook testified she was shot through a window of her house while she was in her bedroom watching television. (Exhibit A, p. 137.) She could see an arm and the gun outside the window. (Exhibit A, p. 138.) On cross examination, Hardenbrook testified she did not see who had shot through the front door or through the window. (Exhibit A, p. 144.) The prosecutor's statement is a fair comment on Hardenbrook's credibility based on the evidence. *See Whigham v. State*, 97 So. 3d 274, 275-276 (Fla. 1st DCA 2012).

Defendant argues the State relied on facts not in evidence when it responded to the defense's assertion that Defendant had no motive to kill Hardenbrook. Specifically, the prosecutor argued Defendant's girlfriend Lakresha Holmes testified she had to take away Defendant's phone because he was giving other girls the number.

Hardenbrook testified Defendant was coming on to her the night of the shooting, and he did not like her telling him not to. (Exhibit A, p. 129.) Holmes testified she took her cell phone away from Defendant prior to the shooting. (Exhibit A, pp. 494-495.) She hid her cell phone from Defendant at night because she did not want him to know guys

were calling her. (Exhibit A, p. 495.) Holmes testified she felt Defendant was cheating on her, but she did not specifically testify Defendant was giving other girls the phone number. (Exhibit A, pp. 488-489.)

At closing, trial counsel questioned why Defendant would get upset about a girl when he had one at home. (Exhibit A, pp. 609-610.) The prosecutor made the contested comment in response to trial counsel's questioning of why Defendant would try to kill Hardenbrook. (Exhibit A, pp. 617-618.) The prosecutor's comment that Defendant was giving other girls the phone number was a misstatement of the testimony. However, there was no reasonable probability the misstatement affected the verdict or that a mistrial would have been granted had counsel objected, as other evidence was consistent with the State's theory that Defendant was coming on to Hardenbrook despite the fact he had a girlfriend. *See Wickham v. State*, 124 So. 3d 841, 861 (Fla. 2013). The jury was also cautioned what the attorneys say is not evidence. (Exhibit A, pp. 545, 612-613.) *See Barlatier v. State*, 26 So. 3d 29, 32-33 (Fla. 3d DCA 2009).

Defendant asserts counsel should have objected to the comment that he was the only person who had any reason to do anything personal to Hardenbrook. (Exhibit A, p. 575.) The State made this comment to argue Defendant was the shooter, as opposed to someone who would shoot Hardenbrook as a favor to him. The comment was a fair inference to be drawn from the evidence. *See Miller v. State*, 926 So. 2d 1243, 1254-1255 (Fla. 2006); *Romero v. State*, 435 So. 2d 318, 320 (Fla. 4th DCA 1983).

Next, Defendant asserts counsel should have objected to the prosecutor's statement that Defendant could see what he was shooting at through the bedroom window. (Exhibit A, p. 622.) Trial counsel argued someone standing outside could not see in the window. (Exhibit A, pp. 598-599.) At trial, Stone testified he could see through the window through the sheer curtain. (Exhibit A, pp. 314, 376.) The prosecutor's statement was a fair comment on the evidence and an

invited comment to the defense's statement. *See Poole v. State*, 997 So. 2d 382, 390 (Fla. 2008).

Next, Defendant asserts counsel should have objected when the prosecutor stated his personal belief that Defendant was guilty by stating he believed the State's burden of reasonable doubt was not an issue. (Exhibit A, p. 619.) The prosecutor's comment was made in response to the defense statement as to why Defendant would tell the story he did and to her statement that the State had not proven its case beyond a reasonable doubt. (Exhibit A, pp. 611, 612, 619.) In the context in which the prosecutor's comment was made, he was arguing the weight of the evidence showed Defendant's story to be false, and he was not stating his personal opinion of Defendant's guilt. *See U.S. v. Tisdale*, 817 F.2d 1552, 1556 (11th Cir. 1987); *Peterka v. State*, 890 So. 2d 219, 235 (Fla. 2004). The jury was also informed it was the State's burden to prove the case beyond a reasonable doubt. (Exhibit A, pp. 551, 611-612, 635).

(Ex. Q, pp. 846-49). The First DCA affirmed without explanation. (Ex. U). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

Applying *Wilson*'s look-through presumption, the state court's rejection of Torrey's claim was based on a reasonable determination of the facts and a reasonable application of *Strickland*'s two-pronged standard. The undersigned has reviewed the evidence presented at trial, the entirety of the parties' opening and closing arguments, and the trial court's instructions to the jury.

Fairminded jurists can concur in the state court's determination that Torrey failed to show counsel's decision not to object was a course no competent counsel

would have taken. A prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted); *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) (holding that the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence). When the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper. *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983). The state court's application of *Strickland*'s performance prong was not unreasonable. *See, e.g., Chandler v. Moore*, 240 F.3d 907, 914 (11th Cir. 2001) (affirming the denial of habeas relief on claim that counsel was ineffective for failing to object when the prosecutor allegedly commented on witness credibility, commented on evidence presented at trial, did not comment on the petitioner's right to remain silent, and did not misstate the burden of proof).

As to the prosecutor's one misstatement, fairminded jurists could concur in the state court's determination that Torrey failed to show that he suffered actual prejudice from counsel's failure to object. Given the totality of the evidence (including Holmes's testimony that she was angry that Torrey hung out with Hughley and Hardenbrook because she believed Torrey was cheating on her), and

given the jury instructions (including the instruction that the attorneys' statements in closing are not evidence), it is not reasonably probable the result of Torrey's trial would have been different had counsel objected. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). Because it is not clear that the state court erred at all, much less erred so transparently that no fairminded jurist could agree with its decision, Torrey is not entitled to federal habeas relief.

## IV.   A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Torrey has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.   Conclusion

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment

of conviction and sentence in *State of Florida v. Michael Anthony Torrey*,

Escambia County Circuit Court Case No. 2009-CF-1266, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this 9th day of April 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**